Next case for argument is 21-1696 Superior Optical Labs v. United States. Mr. Gallacher, please proceed. Thank you, Your Honors. May it please the Court, there are three key points that I want to emphasize this morning. First, the lower court misapplied the arbitrary and capricious standard of review under the Administrative Procedure Act and Dell Federal. The agency's decision to take corrective action should have been reviewed under a highly deferential rational basis test, but it wasn't, and the record on appeal shows it wasn't. Second, this appeal considers a simple question whether the VA provided a coherent and reasonable explanation for its exercise of discretion to take corrective action. The answer is yes. Counsel, I'm kind of confused here. You say that they applied the wrong standard, but the predicate for the VA's decision was the and they had to find an ambiguity before they even went beyond that. And so in this case, you're objecting to the fact that the Court of Federal Claims looked to see whether there was an ambiguity. How is that not the correct analysis? Well, Your Honor, with all due respect, that's not completely correct. The standard that the agency has substantial discretion in making decisions relating to taking corrective action. Dell Federal does not require an actual error in order for an agency to take corrective action. Dell Federal recognizes that corrective action can be taken in the face of a perceived error or in the absence of an error to improve the competitive process. So the fact that the court below actually started by focusing on its own analysis independent of the agency regarding whether the solicitation was ambiguous and then in the second place turned to the agency's rationale expressed in its six-page notice of corrective action, that turned the standard of review on its head and it demonstrated that the court was substituting its own judgment for that of the agency. There was no deference in the first place, Your Honor, because the court reached its own conclusion and then matched up what the number of corrective actions Wait, I just want to make sure I understand. So you're saying that the Court of Federal Claims had no right to exercise judicial review over the predicate question of whether the solicitation was ambiguous? Your Honor, that's not what I'm saying and thank you for allowing me to clarify. What I am saying is that under Dell Federal and APA, the standard of review is whether the agency acted arbitrary or capricious and that has been clarified in Dell Federal to mean the agency provided a coherent and reasonable explanation of its exercise of discretion. That analysis should have started with the agency's notice of corrective action and then followed as to whether or not, with due deference to the agency, the agency expressed a rational and reasonable explanation of why it was doing what it was doing. The court below inverted that. It turned it on its head. It started by reaching its own conclusions to whether there was an actual ambiguity, notwithstanding the fact that Dell Federal does not require an actual ambiguity or an actual error in order to support corrective action. But that was the rationale that the VA used. So if they're supposed to look to see whether their rationale was supported, then how could they not look at that question? Well, and absolutely, Your Honor, but the problem is, again, as to whether or not deference was served, whether deference was given, and when the court started by reaching its own conclusion as to what the solicitation said, that deference was never really reached. What needed to happen here was the lower court needed to start with the agency's six-page notice of corrective action. It needed to consider whether or not the agency reached a coherent and reasonable, or provided a coherent and reasonable explanation of its decision. What the agency did in the six-page notice of corrective action was look at the language that it concluded was, in fact, ambiguous due to references to plural and references to the singular, confusing what the issue was as to what the sample submittals of these eyeglasses needed to look like. But the agency, and frankly, I am open to the fact that reasonable minds can disagree as to the language here, because that is the very nature of an ambiguity. But where the VA reached the conclusion that the language was ambiguous, or was at the very least perceptually ambiguous, that is all that was required for the agency to take corrective action. And the lower court's substitution of its own judgment in the first place did not give the agency decision the due deference that's required under the Administrative Procedure Act and DEL Federal. But didn't the lower court expressly find that the conclusion that the solicitation was ambiguous was unreasonable? The lower court did reach that conclusion, but with all due respect to the lower court, that conclusion was reached ignoring certain record evidence that demonstrates that there was ambiguity. The language in question here has been subject to at least three different interpretations. The first, advanced by the Department of Veterans Affairs, indicated that they were hoping to get two identical sample sets so that they could be evaluated separately due to COVID concerns. Those circumstances changed. The agency actually, in the end, did not need two different sample sets. So are you saying that there is an ambiguity that arises from the very language used? Wouldn't that be a patent ambiguity? Well, even to the extent that that's patent or latent, Your Honor, that's really immaterial to the question. Well, it's important, because if it's patent, you had additional obligations, right? Well, that's not necessarily true, Your Honor. The question as to a patent or latent ambiguity might be relevant with regard to PDS's original protest ground, but with regard to the issue in this case, which is whether the agency had discretion to take corrective action, the patent versus latent ambiguity is really immaterial. The lower court in Dell Federal made this point very clearly, recognizing that that issue was, the issue of patent versus latent in the first place did not really apply and impact the agency's decision to take corrective action. Now, with regard to the differing interpretations here, I mentioned the VA's, the idea that they had originally attended, that the VA admitted in its notice of corrective action that they wanted identical sets, but that word identical never appears in the solicitation. PDS understood this, that it would be submitting a set, meaning the entire sample submittal would be reviewed by the VA with two sets packaged separately. And there's nothing in the solicitation that necessarily makes that a wrong conclusion. Counsel, this is Judge Moore. If that's true, that's not even the way you submitted. You submitted duplicates of nearly everything. So, if you really understood it was one complete set divided in half, in whichever way you meant, your submission was significantly not consistent with that. So, your argument about what you supposedly thought was required is inconsistent with the actual actions you took. No, Your Honor, I disagree. I mean, that is certainly the conclusion that the lower court reached, but I think that that's not necessarily borne out by the record. I think that that's a conclusion, an assumption that the lower court reached. Counsel, what are you talking about? You submitted multiple copies of the same sample. Is that not right? That is incorrect, Your Honor. We submitted three different proposals. My client submitted three different proposals at three different levels of frame quality. One was a medium level, the second was higher, and the third was highest. And each of them had differing price points, and each of them had different samples associated with those submittals. With regard to the medium offering here, or the lowest price offering, which was dismissed as technically unacceptable because it was incomplete, PDS did submit the total number of required samples as set forth in the solicitation as spread across those two sets. But it did not include necessarily everything separately in each of the package set one versus package set two. Well, how can you interpret sets to not include everything when they specifically say, tell you what the sets are supposed to include? Well, I understand, Your Honor. The point is, frankly, it's a little bit like packing a bag for my kid's camp this summer, and you spread that pack across two different duffel bags. When you arrive at camp, yes, you've gone through, you've checked off, you have everything that you need off the list, and it's spread across the two duffel bags, and you have what you need. The fact that it didn't have one of each side of it... Wait, wait, wait. This is not, this is not submit a total group of stuff and submit it in two separate packages. It says submit two sample sets, right? You're right, Your Honor, but it does also talk about how the submittal singular will be evaluated. I mean, this, frankly, this discussion here just highlights the ambiguity there in the language indicating that, well, there are reasonable minds could disagree. And the lower court reached a different conclusion, but the VA also had a differing interpretation, and it recognized that PDS's interpretation was reasonable. PDS reached a different conclusion with regard to this ambiguous language. That was the whole point that the agency was trying to do, was to clarify this through taking corrective action, just to make sure that everything was improved. But importantly, Your Honors, there's a third interpretation here that the lower court completely ignored, and that is that the lower, excuse me, that the evaluation board actually, they used, they applied a third interpretation of this ambiguous language set. They didn't interpret the languages requiring two identical sets. They merely took one of the sets, reviewed it, and if it met the minimum checklist requirements, then they moved on. Importantly, Your Honors, there's no evidence in the record that the awardees actually submitted a fully compliant proposal with both identical sample sets, the same standard that the lower court said PDS should have understood and was the only reasonable interpretation. There's nothing in the record demonstrating that the awardee actually also satisfied that, because both of the awardee's sample sets were not required. This ambiguity just highlights that, well, the agency should have had the discretion in the first place to fix this and to clarify its actual needs, especially given the circumstances had changed and it no longer needed two sets, two sample sets, whether they were identical or otherwise. If there's no other questions, Your Honor, I reserve the balance of my time for rebuttal. That's fine. Mr. Sneckenberg, will you please proceed? Thank you, Your Honor, and may it please the court. I think Your Honor's questions home in on the most pertinent issues here with respect to the standard of review. I have a question about confidentiality. Why in the world is the number of eyeglasses that you each submitted confidential, like whether you submitted four of this kind or five of this kind? Why is that confidential? I want to ask specific questions. I wanted to ask specific questions to Mr. Gallacher, because I don't agree with the answer he gave me, but it would require me to disclose confidential information to discuss the specifics of his example, women's frames of a certain type that were in fact submitted. Why is all of that confidential? Your Honor, I believe Mr. Gallacher, I believe it's his information, and he would take the position that given that it's his specific number of frames, and I think there's also information about the lowest price offer specific number of frames, the agency had treated that information as confidential. I believe Mr. Gallacher would state that that information was confidential. As it doesn't involve superiors' information, we don't take a position on it. Okay. I should have directed this to him, and I will on his rebuttal. I don't understand why if the solicitation said five pairs of men's frames of a certain type, and he submitted four pairs in set one and three pairs in set two, I don't understand why those numbers would be confidential. That doesn't make any sense to me, and it also inhibits my ability to ask questions. But obviously, this is not your issue. Sorry, I used your time. Please proceed. No problem, Your Honor. Regarding the standard of review that is PDS's principal contention on appeal, I think Your Honor's question is homing on the correct issue. The standard is the traditional rational basis standard of review that was announced in systems application that was confirmed in Dell, where this court mentioned that it has been consistently applied in corrective action cases. And as even Mr. Gallagher repeatedly stated, the rational basis test asks whether the contract provided a coherent and reasonable explanation for its exercise of discretion. Now, that's exactly what the court here did. The court examined whether or not the VA's rationale for corrective action was coherent and reasonable, and the including, in fact, that it was, quote, implausible and, quote, utterly lacking in support. Regarding the-and there are a few issues. First, the solicitation was not ambiguous. The lower court parsed the language of the solicitation. As Your Honor's highlighted, the solicitation clearly referred to two sample sets labeled as set one and set two. As the court below found, there would have been no rational explanation why offerors could divide up their sets in any way they so chose. That would only add confusion to the process. Second, the court found that in addition to being-to not being ambiguous, there was no evidence that any offerors relied on the supposed ambiguity. And this is an important independent basis to affirm the decision below because the VA's rationale for taking corrective action was that it found an ambiguity and that that ambiguity prejudiced the offerors. That was the VA's finding. So, again, the court was required to analyze the VA's finding and to determine if it was coherent and reasonable. And as your offer- What about the fact-I mean, if you look at the face of this, it seems like you submit two and they looked at one to see if it was compliant. And so, why did they say that if we were-why did they even go on to say that if we were to look at all of them, we would be able to find-essentially put together a set? Why did any of the reviewers even do that? Well, the reviewers didn't do that when they evaluated proposals. In the corrective action rationale, I believe the VA was just referring to PDS's protest allegation where PDS said that, yes, neither of the two sets in our lowest price proposal, neither of them were complete, but you had them and if you put them together, then they would have had more than enough. In other words, they didn't contemplate. Why did they say that? I think they were just saying-they were just noting that assuming that PDS had followed the interpretation it was alleging in its GAO protest, then that would have established the prejudice. But the VA was, again, assuming that PDS had followed the interpretation it was espousing, which the record belies that conclusion and that assumption. The record shows that PDS's protest interpretation. PDS's lowest price proposal included two nearly complete sets. It just made errors in each of them and that's why it was unacceptable. And then PDS's middle price proposal included at least one independently complete set, which again under PDS's GAO protest and its arguments before this court, there would have been no reason for PDS to provide a single independently complete set in that middle proposal. So that was another independent flaw in the VA's analysis that the court properly found. Additionally, Your Honors, we raised this before the Court of Federal Claims and it's in our appeal brief. The court, because it found that the solicitation was not ambiguous, it did not reach the question of whether or not any ambiguity was patent or latent. However, should this court in any way find that the solicitation was ambiguous, this court would also need to assess whether the ambiguity was patent or latent. The VA's corrective action rationale expressly concluded that there was an ambiguity, obviously, and that the ambiguity was latent, i.e. it wasn't obvious and apparent on the face of the solicitation. That's a critical finding because if the ambiguity were patent, then PDS would have been required to protest that before award. Here, the VA made an express finding that the ambiguity was latent. However, as Judge O'Malley, your questions reflected, the ambiguity, we maintain there was none, but if there was an ambiguity, it stemmed directly from the face of the solicitation and from the supposedly inconsistent terms in the solicitation. So, the VA's expressed conclusion that there was a latent ambiguity was also not coherent and not reasonable. That provides another independent alternative basis for affirming the decision below that the VA's decision to take corrective action was irrational. Your Honors, there are many arguments in PDS's brief. I believe we've addressed them in our response brief. If you have any further questions for me, I'm happy to address them, but we believe that the decision below was well-reasoned and provides multiple basis to affirm, and thus we request that this Court affirm. Thank you, Mr. Schneckenberg. Mr. Gallagher, you have some rebuttal time. Indeed. Thank you very much, your Honors. Let me begin by addressing the confidentiality issue that was raised. These are issues that my client reviewed the record and had identified as confidential. So, I start with that. I am not fluent in the eyeglass industry, and so it is hard for me to say exactly what is and is not definitively proprietary, but I do note that the specific mix of these specific types of frames, and specifically where the allegations were that we maybe didn't carry or that we didn't offer a particular mix, those particular issues were deemed as proprietary and having a potential competitive impact with the competitor. Yes, but the kinds of things you marked as confidential, I'm just going to make something up now so that nobody thinks I'm breaching confidential. Suppose you had to disclose, you had to give two sets of five doggie frames. Clearly, this is not something, I don't know that dogs wear glasses, but doggie frames in one sample and four in the other. That's the kind of question I want to be able to ask you. I don't, I can't imagine for the life of me why the number of a particular style of glasses that you submitted with your proposal would, in fact, be confidential. And by marking it as such, you've prevented me from being able to ask you meaningful questions like that. Well, I apologize for that, your Honor. That certainly was not our intent. Again, it was just with an eye toward ensuring that to the extent this competition, this particular procurement goes back to a competitive process, which is what the VA wanted to do in the first place and what VA, and what PDS has been trying to push for here to try to make sure that the competition is preserved and that no party is unduly prejudiced. But I can't understand for the life of me why the number of eyeglasses you submitted with your proposal is confidential. Can you give me any reason why it makes sense that that be marked confidential? Again, your Honor, I don't know that I can answer the question to perfect clarity for you. The issue does certainly relate to the mix and to the purported failures, I believe that may or may not, if there's questions that it may raise as far as revealing what the scope of the catalog is and that. But with regard to the I don't know that I can answer that question perfectly for you, your Honor. I'm sorry. Okay. Well, then why don't you use my hypo? If the request for submission included a request for two sets of five doggy glasses and you submitted five doggy glasses in one set and then four doggy glasses in the other, how is that consistent with what you're now alleging is your potential interpretation of the submission requirement, which is that you could divide between the two sets, the required five doggy glasses? Well, your Honor, the answer is that the sample sets actually included scores of different types of eyeglasses, some of which were metal, some of which were plastic, some of which were... But in each case, they were broken down by number, right? There were five doggy glasses, there were seven metal glasses, there were 16 plastic glasses. I'm making these up because I'm not allowed to talk about it. But each of them were broken down by number and your submission isn't consistent with your suggestion that you thought you could take that number and just divide it between the two samples. Your submission didn't do that. Yeah, your Honor, with all due respect, if I may answer your question, please. Yes, please. With all due respect, it is consistent. PDS assembled its samples and it assembled it in a way of giving the VA full view of what was going to be included in the proposal. If the solution said five doggy glasses and you put five in one and four in the other, how many total doggy glasses is that? That would be nine, I believe, on the math, right? Yeah. So how is that consistent with a submission that requires five? Well, your Honor, the answer is that there were, like I said, scores of various glasses that were submitted in it. For all of these things, there was... PDS, I think, rarely submitted the bare minimum. It was over and above. The list, the specific checklist that was listed in the proposal was listed somewhere in the neighborhood of, I believe, about 35 or 40 specific types or frames. But the sample set itself was actually much broader than that. And it was designed to, frankly, show off the whole of PDS's offering amongst its proposal. The important point, your Honor, I think here is that it demonstrates that the solicitation required five and PDS offered nine in this particular hypothetical. And that means that in front of the evaluation board asking, did PDS provide the necessary samples, they had in front of them nine of this particular sample set that would certainly seem to meet the solicitation's minimum. So the arbitrary, the confusing distinction between these sample sets, which may or may not have needed to be identical versus the single submittal that the solicitation says was going to be reviewed, that right there, frankly, just demonstrates the ambiguity. As to whether that's patent versus latent, that issue was not ruled on below. And I don't know that it would be appropriate to rule on that issue here from this court. I'm out of time, your Honors. I'm happy to answer any additional questions, but I also want to respect your time. I thank both counsel for their argument. This case is taken under submission. Thank you.